Judge Buckner,
delivered the ¿pinion of the court.
* Chrístofher K. Durbin, administrator of Christopher Durbin, deceased, instituted an action of covenant against E. and H. Brown, executors of Joshua Brown, deceased, on seven different covenants; each bearing date on the 17th of February, 1812; and were payable, annually. The following is a copy of the note first due; and five others, except as to the time of payments, are-literal transcripts of it. The seventh is, for a less amount, "but payable iirlike manner, in property.
“For value received, wejpromise to pay Christopher Durbin ten pounds, to be discharged as follows: ten 'dollars in tea, five in wheat, and five hundred weight of pork, and the balance in corn, to be paid by the ,25th of December, 1815. Given under my hand this' 17th of February, 1812. SAMUEL DURBIN,
JOSHUA BROWN.”
The , defendants in the court below filed several pleas.
1st. Denying that they were executors of Joshua Brown deceased.
2d. Denying that the writings sued on, were-the acts and deeds of said J. Brown.
3d. Denying that the plaintiff was the administrator of C. "Durbin, deceased.
4th. That the covenants in the declaration set forth, were performed by the obligors therein. Upon pleas 1, 2, and 3, issues were joined. For replication to 4th •.plea, the plaintiff pleaded, that the defendants had not paid tile debt in the declaration maintained, upon which issue .was joined. A verdict was found for the plaintiff in the action,in the following words:
“We of the jury, find for the plaintiff two hundred and eleven dollars and fifty cents in damages; we also find that the defendants have intermeddled with and Used the estate, by keeping and applying to their use- *171 a negro boy and some horses-, the value of which, has not been proved;” upon which judgment was entered for the amount to be levied of .the assets, in the. hands of the executors. During:, the trial, several bills of exceptions were taken to the opinions of the court, in admitting some witnesses and rejecting, others.
to{o !)e discharged as follows: ‘‘ten wheat’ £¡ve hundred ’ weight of P°''kand. t,le 00m,” will not support an a°^on of
where a note is given for a sum certairl witha^per- ■ mission to the discharge it in bank paper, ]¡e on the note.-
A motion for a new trial was overruled, and Brown’s executors prosecute this writ of error- with .supersedeas. The errors assigned- arc,
1st. That the court had not jurisdiction of the matters in controversy, and improperly overruled a demurrer to the declaration.
2d. That the verdict is defective, in not responding to the issues, and'did not warrant the judgment; the executors being liable only (if liable at all) for the value of the assets or properly used by them.
3d That the court erred in the various opinions given, as stated in bills of exceptions, and in overruling the motion for a new trial.
The first error assigned, as it relates to - the ser, is founded in a mistake, as to the true history the proceedings in the case. A demurrer was filed to the declaration and sustained; and the defendant there, obtained the permission of the court, and amended the declaration. But we-are of opinion, that there could be no well founded objection to the jurisdiction of the-court. The covenants, upon which the suit was founded, were,-for the payment of property. Actions of debt could not have been maintained upon them; had they even been for amounts over $50; see the case of Noe et al. vs. Preston; V J. J. Marshall, 57; and that of Campbell vs. Weister, I Litt. 31, where it is decided that debt cannot be maintained upon a note for the payment of a certain sum, containing the following expressions:
“The above sum-will be-received in .any good current bank paper.” The fifth section of the act of 1813, II Dig. L. K. 701, giving to justices of the peace, exclusive original-jurisdiction of all sums not exceeding $50, founded ón any specialty, bill or note in writing, or account, does not aid the objection; for it lias been decided, that the words “all sums” used in that section, should be construed to mean sums of money only. Farrow vs. Summers, III Litt. 460.,
In declaring against one who is liable as execute? de son tort, it is proper to style him executor of the last will and testament of the deceased, as if he were the rightful' executor.
A personintermeddling ■with the estate of the deceased-without any lawfulauthoiv ity, by converting a part of it to his ownase, is liable as executor. de son, tort-
What acts make a person liable as executor de. son tort is a question of law, for the court.
On an issue upon the plea of “me unques executor” the plaintiff, to recover, must prove that the defendant has been appointed executor and proved the Will, or that he has made himself liable as executor by intermeddling' withtbegoods of the deceased
*172 Tbe second' error assigned, relates to the verdict and' the judgment. In declaring against one who is liable as executor de son tort, it is proper to style him executor of the last will, and testament of the deceased, as if he were the rightful executor; I Saun.265, N. 2. Intermeddling with the estate of the deceased, without any lawful authority, by converting a part of it, to a man’s own use, will certainly render him liable, as executor de son tori; but what acts make a person liable as a tort executor, is a question of law, for the court; the jury have to determine only, whether the acts be sufficiently proved. Upon an issue formed, upon the plea of “we uniquev executor” the plaintiff to authorize a recovery in his behalf, must prove either that the defendant has been appointed executor, and proved the will; or that he has made himself liable as such, by intermeddling with the goods of the deceased. A general verdict in such case, for the plaintiff, is sufficient,, whether the defendant be a rightful or a tort executor. It is not necessary, upon the trial of such an issue, for the jury to find the value of the property, which came to the possession of, or was converted to the use of the executor de son tort. He like a rightful executor, is liablein all cases, so far as he has assets, to all the debts due by the deceased. Formerly, when an executor de son tort was sued by a creditor, and pleaded “we unquas executor”, and it wag found against him-, he was subjected to the payment of the whole debt, on account of his false plea. Thus, where, upon such plea, it was found, that a bedstead only came to his possession, he was charged with a debt of j660; and in another "case, where, on a like plea, it was found, that the defendant took only a bible, he was charged with a,debt of £ 100. So where the jury found that the defendant detained bonam partem bonorum, andsold them,though itwas objected that bona pars was very uncertain; yet the court held, that he should be chargeable, for he cannot detain any part; and that if he did, let it be of never so small a value, he was liable as an executor de son tort.. Bacon’s Abridgement, II Yol. 390.
’ The same doctrine was applicable to a rightful executor, for if an issue upon the pica of “we unques ex~ ecutor” was found against him, the judgment was de bonis testatoris si, &c. si non, de bonis-propriis. But the law upon this subject, has been altered by the statute *173 of this state; I Dig. L. K. 531. The provisions of the statute are very comprehensive, declaring that c;no executor or executors, administrator or administrators, shall be made liable for more than the amount of assets, which have or may come into his hands to be administered, on account of having failed, to plead, or make defence; or on account of any plea or pleas, which he, she, or they have heretofore, or may hereafter plead to any suit or action -whatever against him, her or them. They embrace all executors, whether they be duly authorized, or are executors de son tori. The only difference which the act makes between them, relates to the periods, within which, the one or the other may be sued, after the death of his testator.
A general verdict for the plaimiff, on the plea of ne unques executor is sufficient, whether the defendant he a rightful or tort executor. On an issue underthe plea of ne unques executor it is not necessary for the jury to find the value of the property, which came to the possession of, or was converted to the use of the executor de son tort. An executor de son tort is like a rightful executor, liable in all cases, so far as he has assets, to all the debts due by the deceased. Issue on a plea of ne ungues executor found against an executor de son tort does not now, render him liable for the whole debt unless he has received assets to that a-tor A distributee is not a com- /or*the Jxecu-5 tor or administrator.
*173 Whether that part of the verdict in this case, which finds that the plaintiffs in error, intermeddled with, and used the estate, &c. might not be rejected as surplusage, and the verdict considered as a general finding for the plaintiff in the circuit court, is. unnecessary to determine, as the judgment must be reversed upon another ground.
To the plea that the covenants were performed by the obligors, the replication was too obviously defective to require comment to prove it. The issue formed upon it was immaterial. A motion in arrest of the judgment if made, would have been sustainable; but although no attempt was made in that way, we are of opinion, that the circuit court erred in overruling the motion for a new trial; because, upon that plea, no issue was formed, upon which the merits of the defence could have been properly tried.
Upon the return of the case to the court below, objections which were made to the competency of certain witesses' may, and probably will be again presented for the decision of that court, and we have therefore considered it, as necessary now to notice them.
The plaintiffs in error, introduced as a witness in support of theirpleas, Hannah Durbin, widow of Samuel Durbin, who was one of the obligors in the covenants sued upon. An objection to her, as an incompetent witness on account of her alleged interest was made, and sustained by the court. Samuel Durbin, her deceased husband, was the son of Christopher Durbin, deceased, (the obligee) and the other witnesses *174 spoke of him, as the son-in-law of Brown, the other' obligor. From this, it is probable that Hannah Durbin was the daughter of Brown.
If so, she was interested, as entitled to a distributable share of the estate of Brown, who it seems, died intestate; because her share of it might be diminished py a judgment against the plaintills in error. See the case °f Denny vs Booker, II Bibb, 427. To remove this objection, the plaintiffs in error procured from-her a release. But whether that instrument rendered her competent, it is unnecessary to determine, as we are of opinion, that she was properly excluded upon another ground. Brown wfts the surety of Samuel' Durbin, in the covenants sued upon, and if the plaintiffs in error, as the executors of Brown, be cast in the suit, and compelled to discharge such judgment as maybe recovered, the estate of Samuel Durbin, (to a portion of which, his widow is entitled) will be answerable to Brown’s representatives; Under this view of the subject, the plaintiffs in- error executed to her a writing, purporting to release her and the administrators and heirs of Samuel Durbin, deceased, from all responsibility to them on account of any money, which they, as executors of Brown, might be compelled to pay on any judgment which might be recovered against them, in the suit depending. If executors de son tort can execute a valid release, exonerating persons from responsibilities to the estate, with which they have in-termeddled, without authority, which is not admitted,, still the reléase under consideration would not have the desired efficacy. Hannah Durbin does not appear to have been the administratrix of S. Durbin, deceased,- and a release to her could not be successfully relied on-by the person, who may have administered upon his estateina suit, in the name of a rightful executor or administrator of Brown, to recover money, made out of Brown’s estate to discharge a debt created by Sam act Durbin, and for the payment of which, Brown was-his surety only. The fact that the release purported to be made to the administrator of S. Durbin, cannot make any difference, because if the plaintiffs in error could, as executors de son tort, make such a release, it does not appear that any person had administered on the estate of S. Durbin. Besides, if upon an issue formed upon the plea of covenants performed by the *175 obligors, it should be found, that S. Durbin had discharged the covenants, it would certainly increase the portion of his estate, to which his widow is entitled. She was therefore, properly excluded by the court.
Turner and Charles A. Wickliffe, for plaintiffs;
"Whether the objection by the plaintiffs in error, to the competency of Joseph Durbin, was properly •overruled, depends upon a fact which the record does ■not satisfactorily show. He was also the son of Christopher Durbin, deceased, and might as such be entitled to a portion of the money sued for; but it satisfactorily appears, that he had transferred in writing, his entire interest in the covenants, to his mother, who had died sometime previous to the trial of this suit; and from the bill of exceptions, it appears that his mother had transferred her interest, in writing, to two persons, children of Joseph, the witness; but that writing is not incorporateo in the record. If the writing vests in the children, the interest of their grandmother, then Joseph Durbin had no interest in the event oí the suit, and was consequently a competent witness.
The judgment of the circuit court must be reversed and the cause remanded to that court, with directions for further proceedings to be had, not inconsistent with this opinion.